1          UNITED STATES DISTRICT COURT
2            DISTRICT OF PUERTO RICO

3  ROY BROWN,

4       Plaintiff,                    Civil No. 05-1242(JAF)

5       v.

6  LATIN AMERICAN MUSIC CO., INC.,
7  et al.,
8
9       Defendants.

10                    **<u>OPINION AND ORDER</u>**

11      Plaintiff, Roy Brown, filed the present complaint against

12  Defendants, Latin American Music Co. ("LAMCO"), and Asociación de

13  Compositores y Editores de Música Latino Americana ("ACEMLA"),

14  seeking declaratory judgment under the Copyright Act of 1909, 17

15  U.S.C. § 1 (*superceded* by 17 U.S.C. § 101, et. seq. (2006)).

16  <u>Docket Document No. 1</u>. Defendants filed an answer and counterclaim,

17  alleging copyright infringement under the Copyright Act of 1978, 17

18  U.S.C. § 101, et seq. <u>Docket Document No.  10</u>.

19      Plaintiff moves for summary judgment as to both Defendants'

20  counterclaim and his own claim for declaratory relief, alleging

21  that the Defendants' copyright claim is unfounded. <u>Docket Document</u>

22  <u>No. 20</u>. Defendants oppose the motion. <u>Docket Document No. 27</u>.

Civil No. 05-1242 (JAF)                                                    -2-

1                                    **I.**

2                    **Factual and Procedural Synopsis**

3       Unless otherwise indicated, we derive the following factual

4    summary from the pleadings, statements of facts, and exhibits

5    submitted by the parties in their summary judgment and opposition

6    motions. Docket Document Nos. 1, 10, 20, 27.

7       Plaintiff, Roy Brown, is a composer and performer who has set

8    a number of poems originally written by Juan Antonio Corretjer to

9    music, and recorded and performed said "musicalizations."

10   Corretjer is the author of the following poems: (1) "En la Vida Todo

11   es Ir"; (2) "Oubao Moin"; (3) "Distancias"; (4) "Inriri Cahuvial";

12   (5) "El Hijo"; (6) "Andando de Noche Sola"; (7) "Día Antes";

13   (8) "Ayuburi"; (9) "Diana de Guilarte"; (10) "Boricua en la Luna"; and

14   (11) "De Ciales Soy."  In 1988, Plaintiff applied for and received

15   copyright registration for songs based on poems #1-10, crediting

16   Corretjer as the author of the lyrics for the registered songs.

17      Defendant and counterclaimant LAMCO is a music publisher

18   incorporated in the state of New York that engages in the business

19   of publishing, licensing, and otherwise marketing and exploiting

20   copyrighted compositions.  Defendant and counterclaimant ACEMLA is

21   a music performance licensing corporation, organized and existing

22   under the laws of Puerto Rico, in the business of licensing the

23   performance of musical works.  In 1999, fourteen years after the

24   death of Corretjer, the poet's heirs assigned the copyright of the

Civil No. 05-1242 (JAF)                                         -3-

1    works penned by Corretjer to Defendants.  In February 2000, LAMCO

2    obtained copyright registration for the work entitled "Oubao Moin

3    y 17 Obras Más de Juan A. Corretjer," which contained poems #1-11.

4        On March 4, 2005, Plaintiff filed the present action,

5    requested a declaratory judgment that poem #1, "En la Vida Todo es

6    Ir," entered the public domain upon its publication due to

7    noncompliance with the statutory formalities required by the

8    Copyright Act of 1909, or, alternatively, entered the public domain

9    because its copyright expired twenty-eight years after the date of

10   first publication and was not renewed as required.  Docket Document

11   No. 1.  Plaintiff additionally requested a declaration that the

12   musical composition "En la Vida todo es ir" is a joint work where

13   Corretjer provided the lyrics and Plaintiff created the music.  Id.

14       On June 16, 2005, Defendants filed an answer and counterclaim,

15   alleging Plaintiff was infringing upon Defendants' rights to eleven

16   poems written by Corretjer, and seeking injunctive relief and

17   monetary damages.  Docket Document No. 10.

18       On January 23, 2006, Plaintiff filed a motion for summary

19   judgment, requesting dismissal of Defendants' counterclaim and

20   seeking the declaratory relief requested in the original complaint.

21   Docket Document No. 20.  Defendants filed their opposition on

22   February 10, 2006.  Docket Document No. 27.

Civil No. 05-1242 (JAF)                                          -4-

1                                   **II.**

2          **Motion for Summary Judgment Standard under Rule 56(c)**

3          The standard for summary judgment is straightforward and

4     well-established.   A district court should grant a motion for

5     summary judgment "if the pleadings, depositions, answers to

6     interrogatories, and admissions on file, together with the

7     affidavits, if any, show that there is no genuine issue as to any

8     material fact and that the moving party is entitled to a judgment

9     as a matter of law." FED. R. CIV. PRO. 56(c).  A factual dispute is

10    "genuine" if it could be resolved in either party's favor, and

11    "material" if it potentially affects the case's outcome.  Calero-

12    Cerezo v. United States Dep't of Justice, 355 F.3d 6, 19 (1st Cir.

13    2004).

14         The moving party carries the burden of establishing that there

15    is no genuine issue as to any material fact.  See Celotex Corp. v.

16    Catrett, 477 U.S. 317, 323 (1986).  However, the burden "may be

17    discharged by 'showing'–that is, pointing out to the district

18    court–that there is an absence of evidence to support the nonmoving

19    party's case."  See id. at 325.  The burden has two components:

20    (1) an initial burden of production that shifts to the non-moving

21    party if satisfied by the moving party; and (2) an ultimate burden

22    of persuasion that always remains on the moving party.  Id. at 331.

23         The non-moving party "may not rest upon the mere allegations

24    or denials of the adverse party's pleading, but . . . must set

Civil No. 05-1242 (JAF)                                              -5-

1   forth specific facts showing that there is a genuine issue for

2   trial," FED. R. CIV. P. 56(e), and may not simply rest upon

3   "conclusory allegations, improbable inferences, and unsupported

4   speculation." Cepero-Rivera v. Fagundo, 414 F.3d 124 (1st Cir.

5   2005) (quoting Rivera-Cotto v. Rivera, 38 F.3d 611, 613 (1st Cir.

6   1994)). Summary judgment exists "to pierce the boilerplate of the

7   pleadings and assess the proof in order to determine the need for

8   trial." Euromodas, Inc. v. Zanella, 368 F.3d 11, 17 (1st Cir.

9   2004) (citing Wynne v. Tufts Univ. Sch. of Med., 976 F.2d 791, 794

10  (1st Cir. 1992)).

11                               **III.**

12                            **Analysis**

13      Plaintiff's motion for summary judgment relies on submitted

14  exhibits meant to show that the disputed poems were in the public

15  domain upon their publication, as they did not conform with

16  statutory requirements under the Copyright Act of 1909. Docket

17  Document No. 20. Alternatively, Plaintiff argues that Defendants'

18  counterclaim is barred under the relevant statute of limitations

19  period. Id. Plaintiff requests that we: (a) summarily dismiss

20  Defendants' counterclaim of copyright infringement; and, relying on

21  the same body of evidence (b) grant summary judgment as to his own

22  motion for declaratory relief. Docket Document No. 20. We examine

23  each issue in turn.

Civil No. 05-1242 (JAF)                                                    -6-

1    **A.    Defendants' Copyright Infringement Claim**

2         To establish copyright infringement, a claimant must prove

3    "(1) ownership of a valid copyright, and (2) copying of constituent

4    elements of the work that are original." Lotus Dev. Corp. v.

5    Borland Int'l, 49 F.3d 807, 813 (1st Cir. 1995) (quoting Feist

6    Publ'n, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991).

7    The plaintiff bears the burden of proof as to both elements. Id.

8    (citing Grubb v. KMS Patriots, L.P., 88 F.3d 1, 3, 5 (1st Cir.

9    1996)).    According to 17 U.S.C. § 410(c), "[i]n any judicial

10   proceedings the certificate of a registration *made before or within*

11   *five years after first publication of the work* shall constitute

12   prima facie evidence of the validity of the copyright and of the

13   facts stated in the certificate.    The evidentiary weight to be

14   accorded the certificate of a registration made thereafter shall be

15   within the discretion of the court." 17 U.S.C. § 410(c) (2006)

16   (emphasis added).

17        In support of their claim that they own a valid copyright over

18   the Corretjer poems, Defendants have submitted a registration

19   certificate, effective February 3, 2000, naming Defendant LAMCO as

20   the copyright claimant over the work "Oubao Moin y 17 Obras Mas De

21   Juan Corretjer," which contains the poems in question. Docket

22   Document No. 10, Exh. A.    According to the registration

23   certificate, the first publication of the copyrighted work was

Civil No. 05-1242 (JAF)                                                    -7-

February 18, 1979, over twenty years prior to the effective date of
the registration certificate.  Id.

        We do not find Defendants' assertions, even taken in the light
most favorable to their case, sufficient to constitute prima-facie
evidence of ownership of a valid copyright.  Numerous federal
courts have held that in cases where, as here, a certificate of
registration is registered more than five years after the first
publication of the work, the registration does not constitute
prima-facie evidence that the copyright is valid, and the party
alleging infringement bears the burden to prove validity.  See
Sem-Torq, Inc. v. K Mart Corp., 936 F.2d 851, 854 (6th Cir. 1991)
(where a work was first published in 1982 and the copyright was
registered in 1988, the district court was not bound to accept the
validity of the copyright); Dollcraft Indus., Ltd. v. Well-Made Toy
Mfg. Co., 479 F. Supp. 1105, 1114 (E.D.N.Y. 1978) (where a work
falls outside the statutory presumption of 17 U.S.C. § 410(c),
plaintiff carries the burden of proving ownership of a valid
copyright); Tuff 'N' Rumble Mgmt. v. Profile Records, 1997 U.S.
Dist. LEXIS 4186, 6-7 (S.D.N.Y. 1997) (when work published 18 years
prior to the registration certificate, plaintiff has the burden of
proving the validity of the copyright).

        Congress added the five-year § 410(c) time limitation to the
Copyright Act of 1979 on the ground that the longer the lapse of
time between publication and registration, the less likely to be

Civil No. 05-1242 (JAF)                                        -8-

1   reliable are the facts stated in the certificate.  3-12 NIMMER ON

2   COPYRIGHT § 12.11.  If the gap between the publication of a work and

3   its subsequent copyright registration is greater than five years,

4   it is within the district court's discretion to determine the

5   evidentiary weight given to the certificate.  Cabrera v. Teatro del

6   Sesenta, Inc., 914 F. Supp. 743, 745 (D.P.R. 1995).  We find

7   specific reason here to question the facts contained in the

8   certificate, as it states that the first publication of the

9   copyrighted work was February 18, 1979, Docket Document No. 10,

10  Exh. A, but Defendants, in their opposition to Plaintiff's

11  statement of uncontested facts, concede that five of the poems in

12  question - "Andando de Noche Sola," "En la Vida Todo es Ir,"

13  "Inriri Cahuvial," "El Hijo," and "Ayuburi" - were first published

14  in 1957.  Docket Document Nos. 20-2, 27-2.

15      In response to Plaintiff's summary judgment motion, Defendants

16  have failed to produce any evidence regarding the validity of the

17  copyrights beyond the questionable certificate.  Docket Document

18  No. 10, Exh. A.  Instead, Defendants have focused on attacking the

19  evidence presented by Plaintiff, stating that Plaintiff has failed

20  to meet the burden of proof necessary to determine that the poems

21  are in the public domain.  Docket Document No. 27.  Defendants'

22  strategy is misguided.  As counterclaimants, they are Plaintiffs

23  for the charges alleged against Roy Brown, and bear the burden of

Civil No. 05-1242 (JAF)                                              -9-

1  proof of establishing the elements of a copyright infringement

2  case. Grubb, 88 F.3d at 3,5.

3        Having produced nothing but the certificate as evidence of

4  ownership over the copyright they claim Plaintiff has violated, and

5  given that Defendants have conceded that the facts contained in the

6  certificate are not wholly accurate, the court finds the

7  certificate alone insufficient to sustain Defendant-

8  Counterclaimants' burden on summary judgment. See Religious

9  Technology Ctr. v. Netcom On-Line Communication Servs., Inc., 923

10 F. Supp. 1231, 1241 (N.D. Cal. 1995); Sem-Torq, Inc., 936 F.2d at

11 854; Johnson, 2000 U.S. Dist. LEXIS 7055, 11-13. Defendants have

12 failed to establish the requisite elements to proceed in their

13 copyright infringement suit and, therefore, Plaintiff Roy Brown's

14 motion for summary judgment as to Defendants' counterclaim is

15 granted.

16 **B.   Declaratory Judgment**

17        Plaintiff additionally requests summary judgment on his claims

18 for declaratory judgment that the Corretjer poem "En la Vida Todo

19 es Ir" is in the public domain, and that the musical composition of

20 the same name is a joint work whereby Corretjer provided the lyrics

21 and Plaintiff created the music. Docket Document No. 1. Plaintiff

22 argues that the poem "En la Vida Todo es Ir" is in the public

23 domain as (i) its publication in the collection of poems titled

24 "Yerba Bruja" did not affix notice of copyright as required under

Civil No. 05-1242 (JAF)                                              -10-

1    section 10 of the 1909 Copyright Act, and (ii) Corretjer allowed

2    general publication of his poems to occur.    Docket Document

3    Nos. 10, 20.

4        The determination of whether a work entered the public domain

5    prior to January 1, 1978, the effective date of the Copyright Act

6    of 1976, must be made according to the copyright law as it existed

7    before that date.    Forward v. Thorogood, 985 F.2d 604, 605 (1st

8    Cir. 1993); Peer Int'l Corp. v. Latin Am. Music Corp., 161 F. Supp.

9    2d 38, 46 (D.P.R. 2001); Estate of Martin Luther King, Jr., Inc. v.

10   CBS, Inc., 194 F.3d 1211, 1214 (11th Cir. 1999).    Prior to the

11   Copyright Act of 1978 going into effect, a work could enter the

12   public domain if the creator allowed a "general publication of his

13   work to occur," - meaning the work was made available to members of

14   the public at large without regard to who they are or what they

15   propose to do with it, Burke v. National Broadcasting Co., 598 F.2d

16   688, 691 (1st Cir. 1979) (citing Caliga v. Inter Ocean Newspaper

17   Co., 215 U.S. 182, 188 (1909)) - without including a copyright

18   notice. See Milton H. Greene Archives, Inc. v. BPI Communs., Inc.,

19   378 F. Supp. 2d 1189, 1196 (D. Cal. 2005).

20       Defendants concede that the poem "En la Vida Todo es Ir" was

21   first published in 1957. Docket Document No. 27-2.    Defendants

22   argue the evidence provided by Plaintiff to support his allegations

23   - a photocopy of the book cover of the compilation "Yerba Bruja,"

24   and the testimony of María Corretjer, the poet's daughter, that the

Civil No. 05-1242 (JAF)                                          -11-

1    author circulated his work "freely among friends and acquaintances

2    at his home and at political activities" - is insufficient because

3    it does not establish that the poem was available to the public at

4    large without the requisite copyright notice.  <u>Docket Document</u>

5    <u>No. 27</u>.

6        Plaintiff must prove that the publication of "Yerba Bruja" was

7    general, as "there is no need to affix a copyright notice where

8    there is only limited publication."  <u>Milton H. Greene Archives,</u>

9    <u>Inc.</u>, 378 F.Supp. 2d at 1197.  Although Plaintiff has submitted an

10   affidavit from the Director of the Puerto Rico Collection in the

11   José M. Lázaro Library of the University of Puerto Rico, <u>Docket</u>

12   <u>Document No. 20-3</u>, the affidavit only proves that the collection

13   "Yerba Bruja" located in the University of Puerto Rico library does

14   not contain the copyright notice, but does not settle the matter

15   regarding general or limited publication.

16       Likewise, the testimony of María Corretjer submitted by

17   Plaintiff does not settle the matter regarding Corretjer's intent

18   to generally publish the poem in question without retaining his

19   copyrights.   <u>Docket Document No. 20, Exh. M</u>. We agree with

20   Defendants that María Corretjer's testimonies are generalizations

21   that, on its own, cannot support a declaration that the poem in

22   question is in the public domain. <u>Docket Document No. 27</u>.

23       Whether the poem "En la Vida Todo es Ir" was generally

24   published without a copyright notice, thus injecting it into the

Civil No. 05-1242 (JAF)                                              -12-

1   public domain, is a material issue of fact that must be determined

2   at trial.  As such, Plaintiff's motion for summary judgment on his

3   request for declaratory judgment is denied.

4                                  **IV.**

5                              **<u>Conclusion</u>**

6        In accordance with the foregoing, we **GRANT IN PART** and **DENY IN**

7   **PART** Plaintiff Roy Brown's motion for summary judgment.  <u>Docket</u>

8   <u>Document No. 20</u>.  Defendants' counterclaim alleging copyright

9   infringement is **DISMISSED WITH PREJUDICE.** <u>Docket Document No. 10</u>.

10  Partial judgment shall be entered accordingly.

11       **IT IS SO ORDERED.**

12       San Juan, Puerto Rico, this 8th day of May, 2006.

13                              S/ José Antonio Fusté
14                              JOSE ANTONIO FUSTE
15                              Chief U. S. District Judge